Nos. 1-01-1295 & First Division

1-01-2443 (cons.) November 4, 2002

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) Nos. 98 CR 9709 &

) 00 CR 17110

    )

DAVID LUNDY, ) The Honorable

) Rodolfo Garcia,   Defendant-Appellant. ) Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

On April 1, 1998, defendant David Lundy was charged by information (98 CR 9709) with one count of possession of cocaine and one count of possession of heroin.  720 ILCS 570/402(c) (West 1992)
.  While on pretrial release, defendant was also charged by information (00 CR 17110) with one count of possession of cocaine with intent to deliver and one count of possession of heroin with intent to deliver.  720 ILCS 570/401(d) (West 1992).  On February 5, 2001, a bench trial was held in case number 00 CR 17110.
(footnote: 1)  The trial court found defendant guilty of both counts of possession of a controlled substance with intent to deliver and set March 8, 2001, as both the trial date in case number 98 CR 9709 as well as the sentencing date for both cases.  On March 8, 2001, following a bench trial in case number 98 CR 9709, defendant was found guilty of both counts of possession of a controlled substance.  Defendant subsequently made an oral motion for a new trial.  The trial court denied the motion.  The trial court then sentenced defendant to concurrent prison terms of one year for possession of cocaine and one year for possession of heroin (98 CR 9709).  Defendant was also sentenced to concurrent prison terms of  seven years for possession of cocaine with intent to deliver and seven years for possession of heroin with intent to deliver (00 CR 17110).  Defendant's seven-year sentence for possession of a controlled substance with intent to deliver was predicated on his status as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 1998)).  The trial court ordered defendant's possession sentences and sentences for possession with intent to deliver to be served consecutively.  
  

On March 29, 2001, defendant filed two separate notices of appeal of his convictions and sentences in both case number 98 CR 9709 and case number 00 CR 17110.  Both appeals were assigned separate appellate court numbers.  On December 26, 2001, the two appeals were consolidated.  On appeal, defendant argues that: (1) the State failed to prove him guilty beyond a reasonable doubt in case number 98 CR 9709 as the State failed to establish that the narcotics recovered from defendant were the same narcotics that were admitted at trial; (2) the trial court improperly shifted the burden of proof to defendant in case number 98 CR 9709, thereby violating defendant's due process rights; (3) defendant was denied the effective assistance of counsel predicated on counsel's failure to 
file a motion to quash defendant's arrest and suppress evidence in case numbers 98 CR 9709 and 00 CR 17110; and (4) both the imposition of a Class X sentence based on prior felony convictions (730 ILCS 5/5-5-3(c)(8) (West 1998))
 and consecutive sentences (730 ILCS 5/5-8-4(h) (West 2000)) are unconstitutional based on the rule announced in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348
 (2000).  For the reasons that follow, we vacate defendant's convictions and sentences for possession of a controlled substance (98 CR 9709) but otherwise affirm. 

BACKGROUND

A. Case Number 00 CR 17110

Officer Robert Kujawski testified that on May 31, 2000, at approximately 10:35 p.m., he set up surveillance near 602 North Central Park Avenue in Chicago, Illinois.   According to Officer Kujawski, the area surrounding 602 North Central Park Avenue was a "known location for high narcotics sales."  While conducting surveillance from a distance of approximately 75 feet, Officer Kujawski observed defendant engage in what he suspected to be three separate narcotics transactions.  Officer Kujawski testified that the lighting conditions were "artificial" and that he had a clear view of defendant.  

Officer Kujawski observed defendant standing on the corner of 602 North Central Park Avenue yelling "Rocks, blows." 
 Officer Kujawski testified that on three separate occasions defendant would engage in brief conversation with an unknown individual, accept an unknown amount of United States currency, bend down, pick up a small box, remove an item, replace the box and hand the item to the unknown individual.  Officer Kujawski further testified that defendant would then walk northbound and hand the United States currency to a black male wearing a black jacket and blue jeans.  According to Officer Kujawski, the box that defendant picked up and from which he removed items during the suspected narcotics transactions was located near the base of the sidewalk next to the grass, approximately a foot to two feet from where defendant was standing.

After observing defendant engage in the third such transaction, Officer Kujawski radioed his partner, Officer Bora, to detain both defendant and the man wearing the black jacket and blue jeans.  Officer Kujawski remained at the surveillance location and observed Officer Bora detain defendant.  The man wearing the black jacket and blue jeans fled on foot, evading police custody.  Officer Kujawski then left the surveillance location and recovered the box at the base of the sidewalk next to the grass.  Upon opening the box, Officer Kujawski found five plastic "baggies" containing "white rocks" and six tinfoil packets containing "white powder."  A custodial search of defendant's person recovered $10.  At the police station, Officer Kujawski inventoried the five plastic bags and the six tinfoil packets under inventory number 2362677.  Officer Kujawski did not inventory the $10 recovered from defendant.

On cross-examination, Officer Kujawski was asked a series of questions with respect to his surveillance location.  Officer Kujawski testified that he was conducting surveillance from a slightly elevated porch located approximately four or five houses down from where defendant was standing.  Officer Kujawski also testified that he had no knowledge of Officer Bora's location prior to detaining defendant.  Officer Kujawski admitted that he was unable to describe the clothing defendant was wearing at the time of the incident.  He further admitted that he was unable to remember the sex or the clothing of the three unknown individuals who approached defendant and purchased narcotics.

The parties then stipulated that Melissa McCann, a forensic scientist employed by the Illinois State Police Crime Lab, received six items containing suspected heroin and five items containing suspected cocaine under inventory number 2362677.  After chemical analysis, 
McCann determined that one of the items containing suspected heroin weighed 0.1 gram and tested positive for heroin.  The other items containing suspected heroin weighed an estimated 0.5 gram and were not analyzed.  McCann further determined that one of the items containing suspected cocaine weighed 0.1 gram and tested positive for cocaine.  The other four items containing suspected cocaine weighed an estimated 0.7 gram and also were not analyzed.  The parties further stipulated that McCann "employed proper means in testing the items, *** her findings were within a reasonable degree of scientific certainty, and the chain of custody was intact at all times."  Defendant neither testified nor called witnesses on his behalf.

After closing arguments, the trial court found defendant guilty of both counts of possession of a controlled substance with intent to deliver.  The trial court then set March 8, 2001, as both the trial date for case number 98 CR 
9709 and the sentencing date for each case. 

B. Case Number 98 CR 9709

Officer Brian Hansen testified that on March 1, 1998, around 5:15 p.m., he and his partner, Officer Frenzel, received a radio call while in their squad car in the vicinity of 1014 South Racine Avenue in Chicago, Illinois.  The call described a black male suspected of purchasing narcotics and reported that the suspect was walking northbound through a Chicago House Authority (CHA) courtyard toward 1014 South Racine Avenue.  As Officer Hansen was driving, he observed a man fitting the radio description walking across the CHA courtyard toward 1014 South Racine Avenue.  Officer Hansen immediately made a U-turn traveling northbound on South Racine Avenue to an alley located at 1014 South Racine Avenue.  Officer Hansen then headed westbound down the alley when he observed defendant exiting the CHA property.

Officer Hansen parked his vehicle, exited and approached the suspect, later identified as defendant, and ordered him to stop.  Defendant continued to walk northbound asking, "What do you want with me?"  Officer Hansen testified that from a distance of 20 to 25 feet, he then observed defendant "place his right hand into his right jacket pocket and toss a clear plastic bag containing numerous multi-colored plastic bags and a shiny metal object to the ground."  Officer Hansen again ordered defendant to stop, but defendant once again ignored the officer's command.  Officer Hansen then chased after defendant and detained him.  In response to the prosecutor's characterization of the evidence, Officer Hansen testified that after he detained defendant he recovered the "item" that defendant had tossed to the ground.  He later inventoried that "item" under inventory number 1951630.       

On cross-examination, Officer Hansen admitted that he could not remember the specific description of the man reported in the radio call.  Officer Hansen further testified that defendant was with a woman at the time of his arrest.   

The parties then stipulated that Clifford T. McCurdy, a forensic scientist employed by the Illinois State Police Crime Lab, received six "packages" containing a "chunky substance" and one "package" containing "powder" under inventory number 1951630.  After chemical analysis, 
McCurdy determined that the six "packages" containing a "chunky substance" weighed 1.06 grams and tested positive for cocaine.  McCurdy further determined that the single "package" containing "powder" weighed 0.1 gram and tested positive for heroin.

Defendant then called his cousin, Haveard Welch, to testify on his behalf.  Haveard provided a contrary account of what occurred on the afternoon of March 1, 1998.  Haveard testified that on the date in question, at approximately 4 p.m., he was driving with defendant near the intersection of Racine Avenue and Taylor Street when they were pulled over by a police vehicle.  According to Haveard, a police officer asked him to exit the vehicle and another officer asked defendant to exit the vehicle.  Both Haveard and defendant complied with the officers' commands.  Haveard was then searched by the same police officer who ordered him to exit the vehicle.  After the officer failed to find anything, Haveard testified that the officer "told him to get lost."  Haveard further testified that he had no independent knowledge of what happened to defendant after he left, but he later discovered that defendant was incarcerated.  
  

On cross-examination, Haveard admitted that he did not remember whether the officers were in uniform.  He further admitted that he did not remember whether the officers were driving a marked or unmarked police vehicle or whether the officers activated their flashing lights and sirens.  

After closing arguments, the trial court found defendant guilty of both counts of possession of a controlled substance.  Defendant made an oral motion for a new trial which the trial court subsequently denied.  The court then sentenced defendant for both his possession convictions (98 CR 9709) and his earlier convictions for possession with intent to deliver (00 CR 17110).  Defendant was sentenced to concurrent prison terms of one year for possession of cocaine and one year for possession of heroin (98 CR 9709).  Defendant was also sentenced to concurrent prison terms of seven years for possession of cocaine with intent to deliver and seven years for possession of heroin with intent to deliver (00 CR 17110).  Defendant's seven-year sentence for possession of a controlled substance with intent to deliver was predicated on his status as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 1998)).  The trial court then ordered defendant's possession sentences and sentences for possession with intent to deliver to be served consecutively.
  This appeal followed.  

ANALYSIS

A. 98 CR 9709

Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of possession of a controlled substance in case number 98 CR 9709 because the State failed to establish that the narcotics recovered from defendant were the same narcotics that were admitted at trial.  

"Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he has previously stipulated.  [Citation.]  Here, defendant did stipulate to certain facts at trial.  However, defendant does not now attempt to attack or otherwise contradict those specific facts but, rather simply contends that given all of those stipulated facts as well as their plain, natural and ordinary meaning [citation], the State nevertheless failed to establish a sufficiently complete chain of custody.  [Citation.]" 
 People v. Gibson
, 287 Ill. App. 3d 878, 880 (1997).

"A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt."  
People v. Clemons
, 277 Ill. App. 3d 911, 923 (1996).  "In addressing the question of the sufficiency of the evidence it is not the court's role to reweigh the evidence." 
 People v. Hendricks
, 325 Ill. App. 3d 1097, 1110 (2001).  Rather, the relevant question on review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Jimerson
, 127 Ill. 2d 12, 43-44 (1989).

"Evidence of a proper chain of custody is required where physical evidence is not readily identifiable or is susceptible to tampering or contamination.  The chain of custody must be sufficiently complete to make it improbable that the evidence has been subject to tampering or accidental substitution.  [Citation.]  In the absence of evidence that the sample has been compromised, the State need not exclude every possibility of tampering or contamination, only that it took reasonable protective measures after the evidence was seized and that it is unlikely that the evidence has been altered.  [Citation.]

Once the State has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence.  [Citation.]  Thus, even where there is a missing link in the chain of custody, trial courts have properly admitted evidence where there was testimony which sufficiently described the condition of the evidence when delivered which matched the description of the evidence when examined.  [Citations.]" 
 People v. Bynum
, 257 Ill. App. 3d 502, 510 (1994).

Defendant asserts that because the State failed to present any evidence as to what safekeeping procedures, if any, were utilized to assure that the narcotics taken from defendant had not been contaminated, altered or substituted, defendant's conviction for possession of a controlled substance should be reversed.  Specifically, defendant asserts that "[Officer] Kujawski
(footnote: 2) did not testify that he placed the items in any kind of sealed container or bag, nor that the state crime lab received the items in a sealed condition; *** [Officer] Kujawski did not testify that he kept the items in any kind of locked container or compartment, nor that the items were stored separate from any other items of suspected contraband; and *** there was no testimony as to who stored the items, who had access to the items, or where the items were stored."  Defendant cites to 
People v. Rhodes
, 81 Ill. App. 3d 339 (1980), 
People v. Valentin
, 66 Ill. App. 3d 488 (1978), and 
People v. Pagliara
, 47 Ill. App. 3d 708 (1977) to support his contention that the State must present evidence of the extensive measures noted above in order to establish a proper chain of custody. 

At trial, Officer Hansen presented the following testimony on the issue of chain of custody:

"Q. [PROSECUTOR:] What did [defendant] do?

A. [OFFICER HANSEN:] He looked in my direction saying, 'What do you want with me[?]'  He then continued to walk northbound.  At that time he placed his right hand into his right jacket pocket and tossed to the ground 
a clear plastic bag containing numerous multi-colored plastic bags and a shiny metal object 
***.

* * * 

Q. [PROSECUTOR:] Did you recover the item that he had dropped to the ground?

A. [OFFICER HANSEN:] Yes.

Q. [PROSECUTOR:] And did you subsequently inventory that item that you found the defendant to have?

A. [OFFICER HANSEN:] Yes.

Q. [PROSECUTOR:] And did you inventory it under Inventory Number 1951630?

A. [OFFICER HANSEN:] Yes."  (Emphasis added.)

Following Officer Hansen's testimony, a stipulation was entered into between the parties:  

"[PROSECUTOR]: Your Honor, at this time we seek leave to receive a stipulation.  That stipulation, by and between the parties, is that Inventory Number 1951630 was received by Forensic Scientist Clifford T. McCurdy, of the Illinois State Police Crime Lab, Division of Forensic Services, that Clifford T. McCurdy would be qualified to testify as an expert in the area of forensic science; that he received *** 6 
packages
 of a chunky substance and he tested those 6 
packages
 and found it [
sic
] to contain 1.06 grams of cocaine.  He also received one 
package
 and found it to contain 0.1 grams [
sic
] of powder ***  which was heroin; and there were two plastic bags with residue where there was no analysis done.

DEFENSE COUNSEL: So stipulated, Your Honor, that that 
would be the testimony of the chemist.

THE COURT: All right.  That stipulation will be accepted as part of the evidence."  (Emphasis added.)

The State does not dispute that it failed to present specific evidence as to what detailed safekeeping procedures took place.  Rather, the State asserts that the "combined testimony of [Officer Hansen] and the stipulation from the forensic scientist [McCurdy] who performed the laboratory analysis was sufficient to establish the chain of custody."  

While we agree that 
Rhodes
, 
Valentin
 and 
Pagliara
 do not establish a steadfast rule that the State must demonstrate such extensive measures in order to sustain its burden of establishing a proper chain of custody, the State was required to prove that it was improbable that the narcotics recovered from defendant had been compromised.  
Bynum
, 257 Ill. App. 3d at 510.  Therefore, the State was required to show, 
at the very least
, that the condition of the narcotics delivered by Officer Hansen matched the description of the narcotics examined by McCurdy.  
Bynum
, 257 Ill. App. 3d at 510.  On the record presented, the State has failed to do so.  The only testimony provided by Officer Hansen with respect to chain of custody was that he recovered from defendant "a clear plastic bag containing numerous multi-colored plastic bags and a shiny metal object" and that he subsequently inventoried this item under inventory number 1951630.  Officer Hansen did not testify as to the exact number of multicolored plastic bags he recovered.  Officer Hansen did not provide a description of what he found inside the multicolored plastic bags or what he believed the shiny metal object to be.  Additionally, Officer Hansen did not testify as to the weight of the multi-colored plastic bags or the shiny metal object he recovered.  

Because Officer Hansen did not provide this testimony, the only description that matches between Officer Hansen's testimony and McCurdy's stipulated testimony is the inventory number–1951630.  Moreover, there are inconsistencies between Officer Hansen's description of what he recovered from defendant and the stipulation entered describing what McCurdy examined.  Officer Hansen testified that he recovered and inventoried numerous multicolored "bags."  The stipulation, on the other hand, states that McCurdy received and tested a total of seven "packages."  

Most important, however, is the failure of the stipulation to describe the "packages" at all.  We would be willing to discount the bags/packages distinction if other evidence provided a certain indicia of reliability that the "bags" obtained by Officer Hansen were the same as the "packages" examined and tested by McCurdy.  The State could have easily demonstrated this by wording the stipulation to state that McCurdy received and tested six 
multicolored
 "packages" and one 
tinfoil
 or 
shiny metal
 "package."  Instead, the only evidence the State provided to demonstrate that the narcotics recovered by Officer Hansen were the same as those examined and tested by McCurdy was the inventory number.  We hold that the State cannot demonstrate a reasonable probability that the narcotics used to convict a defendant have not been altered or substituted–thus establishing a complete chain of custody–by merely providing an inventory number without other corroborating evidence. 

Furthermore, we do not find that defendant's failure to argue, either at trial or on appeal, that the narcotics recovered by Officer Hansen were contaminated, tampered with or substituted militates against reversal of defendant's conviction.  Based on our determination that the State has failed to sustain its burden of proof, defendant's burden to show actual evidence of tampering or substitution was never triggered.  See 
Bynum
, 257 Ill. App. 3d at 510 (defendant is not required to show actual evidence of tampering or substitution unless the State has first established the probability that the evidence was not compromised).

Here, the State has failed to demonstrate a reasonable probability that the narcotics evidence used to convict defendant had not been altered or substituted.  Due to this failure, the narcotics evidence should not have been admitted at trial.  Without the narcotics evidence, there can be no crime.  Accordingly, pursuant to our authority under Supreme Court Rule 615(b)(4), we vacate defendant's convictions and sentences on the possession charges (98 CR 9709).  134 Ill. 2d R. 615(b)(4); 
People v. Crisp
, 242 Ill. App. 3d 652, 665 (1992).  Because this issue is dispositive, we need not address the remaining arguments defendant asserts on appeal as to case number 98 CR 9709.  We now address defendant's arguments with respect to case number 00 CR17110.

B. 00 CR 17110

1. Ineffective Assistance of Counsel

Defendant next argues that his trial counsel was ineffective in case number 00 CR 17110 for failing to file a motion to quash his arrest and suppress the fruits of that arrest. 

We review claims of ineffectiveness of counsel under the two-pronged test set forth in 
Strickland v. Washington
, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984), which our supreme court recognized in 
People v. Albanese
, 104 Ill. 2d 504, 526-27 (1984).  To determine whether there has been a violation of the defendant's sixth amendment right to effective assistance of counsel, 
the defendant must show: (1) that his counsel's "representation fell below an objective standard of reasonableness"; and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  
Strickland
, 466 U.S. at 694, 80 L. Ed .2d at 698, 104 S. Ct. at 2068; 
People v. Shatner
, 174 Ill. 2d 133, 144 (1996); 
People v. Consago
, 170 Ill. App. 3d 982, 987 (1988).  "If an ineffective-assistance claim can be disposed of on the ground that defendant did not suffer sufficient prejudice, the court need not decide whether counsel's errors were serious enough to constitute less than reasonably effective assistance under the deficiency prong."  
People v. Pacheco
, 281 Ill. App. 3d 179, 183 (1996), citing 
People v. Eddmonds
, 143 Ill. 2d 501, 512 (1991).

"A trial counsel's failure to file a motion to [quash arrest or] suppress [evidence] does not establish incompetent representation when that motion would be futile; as it is a matter of trial strategy to file such a motion, counsel's decision will be accorded great deference. [Citation.] Such decisions by counsel are thus not ordinarily challengeable on review as ineffective-assistance claims. [Citation.]"  
Pacheco
, 281 Ill. App. 3d at 183.  "To establish the prejudice prong of 
Strickland
 in the context of a motion to [quash arrest or] suppress [evidence], a defendant must show that a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed."  
People v. Nunez
, 325 Ill. App. 3d 35, 42 (2001), citing 
People v. Orange
, 168 Ill. 2d 138, 153 (1995); 
People v. Myers
, 246 Ill. App. 3d 542, 545 (1993).  " ' "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " 
Nunez
, 325 Ill. App. 3d at 42, quoting 
People v. Erickson
, 183 Ill. 2d 213, 224 (1998), quoting 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Defendant first argues that his trial counsel was ineffective for failing to file a motion to quash his arrest where the testimony of the surveillance officer demonstrating that his partner had probable cause to arrest defendant was "unbelievable."  

At trial, the surveillance officer, Officer Kujawski, was the only witness to testify.  Officer Kujawski testified that he set up surveillance near 602 North Central Park Avenue--a "known location for high narcotics sales."  While conducting surveillance, Officer Kujawski observed defendant engage in what he suspected to be three separate narcotics transactions.  Officer Kujawski testified that he overheard defendant yelling "Rocks, blows."
(footnote: 3)  Defendant would then engage in brief conversation with an unknown individual, accept an unknown amount of United States currency, bend down, pick up a small box, remove an item, place the box back down and hand the item to the unknown individual.  Officer Kujawski further testified that between transactions he observed defendant walk northbound and hand the United States currency to a black male wearing a black jacket and blue jeans.  After observing defendant engage in the third such transaction, Officer Kujawski radioed his partner, Officer Bora, to detain both defendant and the man wearing the black jacket and blue jeans.  Officer Kujawski remained at the surveillance location and observed Officer Bora detain defendant.  The man wearing the black jacket and blue jeans fled on foot evading police custody.  

Defendant claims, in a conclusory fashion, that Officer Kujawski's testimony is "unbelievable."  We note, however, that in order to establish that his trial counsel was ineffective, defendant is required to show that if his trial counsel had filed a motion to quash defendant's arrest there is a reasonable probability that the motion would have been granted.  
People v. Nunez
, 325 Ill. App. 3d at 42.  Here, in light of the fact that the trial court found defendant guilty, it implicitly found Officer Kujawski's testimony to be credible.  See 
People v. Brisbon
, 106 Ill. 2d 342, 360 (1985) (it is the responsibility of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony and the reasonable inferences to be drawn therefrom).  Therefore, we find that it would have been futile for defendant's trial counsel to file a motion to quash defendant's arrest based on the "unbelievability" of Officer Kujawski's testimony.  

Furthermore, we find that 
any
 motion filed by defendant's trial counsel to quash defendant's arrest would have been futile because Officer Bora clearly had probable cause to arrest defendant.  

"Probable cause to arrest exists where the facts and circumstances known to the police officer at the time of the arrest, are sufficient to warrant a person of reasonable caution to believe that an offense had been committed *** by the person arrested.  [Citation.]  The existence of probable cause is determined by the totality of the circumstances at the time of the arrest.  [Citation.]  A determination of probable cause is governed by commonsense, practical considerations and not by technical legal rules.  [Citation.]" 
People v. Metcalfe
, 326 Ill. App. 3d 1008, 1012 (2001).

"When officers are working in concert, probable cause can be established from all the information collectively received by the officers even if that information is not specifically known to the officer who makes the arrest. [Citation.]  Certainly, arresting officers may rely upon dispatches to make arrests even if they are unaware of specific facts that established probable cause to make the arrest.  [Citation.]  In such a case, however, the State must demonstrate that the officer who directed the dispatch to be issued possessed facts sufficient to establish probable cause to make the arrest.  [Citation.]" 
People v. Bascom
, 286 Ill. App. 3d 124, 127-28 (1997).

Based on the totality of the circumstances at the time of defendant's arrest, we find that Officer Kujawski, who radioed Officer Bora to arrest defendant, possessed facts sufficient to establish probable cause to arrest defendant as a person of reasonable caution could believe that defendant had committed three separate illegal narcotics transactions.  As Officer Bora was properly relying on Officer Kujawski's radio dispatch when arresting defendant, the State was not required to independently establish probable cause for Officer Bora's arrest of defendant. 

Defendant further asserts, however, that his trial counsel was ineffective for failing to file a motion to suppress the box recovered and subsequently searched by Officer Kujawski.  According to defendant, he had a "reasonable expectation of privacy in his box" and "because none of the exceptions to the warrant requirement appl[y] * * *, the search of it was illegal."  

The State does not dispute that defendant had a privacy interest in the box.  Rather, the State asserts that Officer Kujawski's search of the box was a valid warrantless search incident to arrest pursuant to section 108-1(d) of the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/108-1(d) (West 2000)).  Section 108-1(d) states: "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of *** [d]iscovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense."  725 ILCS 5/108-1(d) (West 2000).  Because we have already determined that defendant's arrest was valid, we find that Officer Kujawski similarly had probable cause to seize the box.  We therefore focus our analysis solely on whether Officer Kujawski's warrantless "search" of the box was valid.

"The fourth amendment to the United States Constitution protects people from unreasonable searches and seizures of their persons, houses, papers and effects.  (U.S. Const., amend. IV.)  A search conducted without a warrant is 
per se
 unreasonable unless it is a search conducted pursuant to consent, a search incident to arrest, or a search predicated upon probable cause where there are exigent circumstances which make it impractical to obtain a warrant. [Citation.] A warrantless search incident to arrest is valid, provided that the search was contemporaneous with the arrest, was conducted to prevent the arrestee's seizure of a weapon or his destruction of evidence, and was limited to the area within the arrestee's immediate control. [Citations.]" 
 People v. Alexander
, 272 Ill. App. 3d 698, 704 (1995).

 We find that the record presented on appeal fails to support the conclusion that if trial counsel had filed a motion to suppress the box and its contents, the motion would have been granted.  The record clearly demonstrates that Officer Kujawski's search of the box was contemporaneous with defendant's arrest and that the search was limited to an area within defendant's immediate control.  Officer Kujawski testified that he left his surveillance position immediately after Officer Bora detained defendant and that it took him 30 to 40 seconds to reach the scene of the crime and recover the box.  Additionally, Officer Kujawski testified that, during the course of the narcotics transactions, defendant stood one to two feet from the box and that on three separate occasions defendant bent down, picked up the box, removed an item and placed the box back down.

What the record does not demonstrate, however, is whether Officer Kujawski's search of the box was conducted in order to prevent defendant's seizure of a weapon or his destruction of the box and/or its contents.  The only testimony Officer Kujawski provided with respect to his search of the box was that he left his surveillance location after Officer Bora detained defendant, walked to the scene of the crime and recovered the box at the base of the sidewalk next to the grass, and that upon opening the box he discovered five plastic "baggies" containing "white rocks" and six tinfoil packets containing "white powder."  The record is devoid of evidence with respect to defendant's exact location at time of the search.  For example, the record fails to address such questions as: Was defendant handcuffed at the time of the search?  Was defendant locked in the squad car at the time of the search?  In what direction did the man wearing the black jacket and blue jeans who took the money from defendant run as Officer Bora approached?  Was there a threat that this other man could return to the scene of the crime and destroy the box or its contents?  Absent answers to these questions, we cannot say that had defendant's trial counsel filed a motion to suppress the box and its contents, there was a reasonable probability that the motion would have been granted.  

It is defendant's burden to demonstrate that he has received ineffective assistance of counsel.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; 
People v. Shatner
, 174 Ill. 2d 133, 144 (1996); 
People v. Consago
, 170 Ill. App. 3d 982, 987 (1988).  To prevail on his claim that his trial counsel was ineffective for failing to file a motion to quash arrest or suppress evidence, defendant was required to prove that "a reasonable probability exist[ed] both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed." 
People v. Nunez
, 325 Ill. App. 3d 35, 42 (2001).   Based on the record, defendant has failed to sustain this burden.  See 
People v. Willis
, 235 Ill. App. 3d 1060, 1069 (1992) (finding that defendant failed to satisfy the prejudice prong of 
Strickland
 where the record did not support the conclusion that his trial counsel was ineffective for filing an improper speedy trial motion).  

Because defendant is unable to demonstrate sufficient prejudice resulting from his trial counsel's failure to file either a motion to quash defendant's arrest or to suppress the box and its contents, we need not reach the first prong of 
Strickland
, 
i.e.,
 whether counsel's errors were serious enough to constitute less than reasonable effective assistance.  
Pacheco
, 281 Ill. App. 3d at 183.

2. 
Apprendi

Finally, defendant argues that his sentence in case number 00 CR 17110 as a Class X offender pursuant to section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 1998)) (the Code) predicated on his prior felony convictions is unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000).  We disagree.

In 
Apprendi
, the United States Supreme Court held that, "
[o]ther than the fact of a prior conviction
, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  (Emphasis added.)  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  By its own terms, the 
Apprendi
 rule does not extend to recidivist statutes.  We decline to depart from settled precedent finding section 5-5-3(c)(8) of the Code constitutional under 
Apprendi
.  
People v. Young
, No. 1-00-3525, slip op. at 14-16 (September 23, 2002); 
People v. Echols
, 325 Ill. App. 3d 515, 517 (2001); 
People v. Childress
, 321 Ill. App. 3d 13, 27 (2001); 
People v. Roberts
, 318 Ill. App. 3d 719, 729 (2000); 
People v. Ramos
, 318 Ill. App. 3d 181, 193 (2000); 
People v. Lathon
, 317 Ill. App. 3d 573, 587 (2000).  

CONCLUSION

Because the State failed to demonstrate a reasonable probability that the narcotics evidence used to convict defendant in case number 98 CR 9709  had not been altered or substituted, we vacate defendant's convictions and sentences for possession of a controlled substance.  Defendant's convictions and sentences for possession of a controlled substance with intent to deliver (number 00 CR 17110) is affirmed.

Vacated in part; affirmed in part.

McNULTY, J., and GORDON, P.J., concur.

   

        

 

     

FOOTNOTES
1: The record is unclear as to why defendant's subsequent charges of possession with intent to deliver (allegedly committed while defendant was on pretrial release) were tried before defendant's initial charge of simple possession.

2: We note that the arresting officer in case number 98 CR 9709 was Officer 
Hansen
.  Officer 
Kujawski
 was the surveillance officer in case number 00 CR 17110.  In case number 00 CR 17110, the parties stipulated that "the chain of custody was intact at all times."  Chain of custody, therefore, cannot be at issue in that case.  However, in its response brief, the State addresses defendant's chain of custody argument as if defendant properly named Officer Hansen as the arresting officer.  Because defendant's error in naming the wrong officer appears to be due to inadvertence and the State will not be prejudiced by our review of the issue, we will address defendant's argument as it pertains to case number 98 CR 9709. 

3: "Rock" is the street term for cocaine in rock form.  
People v. Trotter
, 293 Ill. App. 3d 617, 618 (1997).  "Blow" is the street term for white heroin.  
People v. Durdin
, 312 Ill. App. 3d 4, 5 (2000).