ILLINOIS OFFICIAL REPORTS

**People v. Douglas, 2011 IL App (1st) 093188**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONCHAWN DOUGLAS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-3188 |
| Filed | November 23, 2011 |
| Rehearing denied | December 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's *pro se* postconviction petition was properly dismissed as "frivolous and patently without merit" where there was no factual support for his claim that he invoked his right to counsel right after his arrest and his counsel should have objected to the introduction of his custodial statements on that basis and his claim that his counsel should have called a witness to contradict the testimony of the State's key witnesses did not constitute an arguable constitutional claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-30561; the Hon. Lawrence P. Fox, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Melinda Grace Palacio, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Marie Q. Czech, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE GARCIA delivered the judgment of the court, with opinion.
Presiding Justice R. Gordon and Justice Cahill concurred in the judgment and opinion.

**OPINION**

¶ 1    This court affirmed defendant Ronchawn Douglas's conviction of the first-degree murder of Grover Anthony George, following a jury trial, and his sentence of 60 years. *People v. Douglas*, No. 1-06-1394 (2008) (unpublished order under Supreme Court Rule 23). The defendant now challenges the first-stage dismissal of his *pro se* postconviction petition. He contends his petition stated the gist of a constitutional claim of ineffective assistance of counsel based on two omissions. The defendant contends he invoked his right to counsel soon after his arrest, which should have been the basis to exclude his two custodial statements introduced at trial. The defendant faults his defense counsel for not objecting to the introduction of his postarrest statements. The defendant also contends trial counsel should have called a witness to contradict the testimony of one of the State's key witnesses. We find there is no factual support for his first claim and his second does not rise to an arguable constitutional claim. We agree with the circuit court's summary dismissal of the defendant's "frivolous and patently without merit" petition and affirm.

¶ 2                                        BACKGROUND

¶ 3    On February 1, 2006, the defendant was convicted of first-degree murder. Soon after the defendant's arrest, attorney Thomas Organ filed his appearance on behalf of the defendant. Approximately eight months before trial, the court allowed attorney Organ to withdraw and appointed new counsel for the defendant. At trial, the State presented several witnesses; the defense presented one. The State presented David Butler and Thomas Brewer as eyewitnesses.

¶ 4    Butler testified that he was with the defendant and the victim shortly before the shooting. Butler knew the defendant well and was the victim's cousin. Before the crime took place, the three were initially gathered at the victim's car. Butler left to enter his house. From the front

picture window of his home, Butler saw the victim and the defendant standing on Thomas Brewer's porch across the street. Butler testified he saw the victim and the defendant leave the porch and walk back toward the car. Butler then saw the defendant shoot the victim in the back of the head. As Butler ran out of his house toward the victim, he saw the defendant jump into a Ford van and leave the scene. Later that day, Butler identified the defendant from a photo array. On the back of the defendant's photograph, Butler wrote, "This is the killer that shot my cousin." Approximately nine months after the shooting, Butler identified the defendant at an in-person lineup. During defense counsel's cross-examination of Butler, he acknowledged that he witnessed the shooting through a picture window and the shooting occurred before he could "say anything."

¶ 5       Thomas Brewer testified that the defendant and the victim came to his house. After they left, Brewer heard a "pow" and looked through the blinds of his front door. He saw the victim lying on the ground and the defendant standing over him. He then saw the defendant shoot the victim. He called 911. Brewer admitted on direct examination that he did not initially tell the police what he saw. He explained he did not want to get involved and he believed in street justice to an extent. He also testified that his children were staying with the defendant's mother at the time, and he worried about their safety. After the defendant's arrest, Brewer came forward with information because he would "rather have people mad at [him] over a truth than over a lie."

¶ 6       On cross-examination, Brewer testified that he told police on the day of the shooting that he heard the shots, but did not see the shots fired. He also admitted that the blinds he looked through were "for the most part" closed. He admitted he told the defendant's mother he did not see the defendant shoot the victim.

¶ 7       The State's next witness, Muriel Brewer, Thomas Brewer's sister, testified she was at home with her brother on the day of the shooting. She had known the defendant since he was 10 years old. She saw the defendant at her home with her brother and the victim shortly before the shooting. After she heard noise from the street, she looked out and saw Butler standing over the victim's body. She tried to call 911, but her brother was already on the phone.

¶ 8       The State called several of the investigating police officers. An arresting officer testified that when the defendant was apprehended he claimed his name was Cortez Ford. The defendant also claimed he did not know the victim and he had never been to the intersection where the shooting took place.

¶ 9       Following the denial of the defendant's motion for a directed verdict, the defense called its only witness. Officer David Eaglin testified that he spoke to Butler soon after the crime occurred. Butler initially told Officer Eaglin that he saw the defendant shoot the victim. Later, Butler told Officer Eaglin that he did not actually see the defendant shoot the victim but, rather, heard the shot and saw the defendant standing over the victim.

¶ 10      After deliberating a few hours, the jury sent a note indicating it was having difficulty reaching a decision. No response to this note appears in the record. After more deliberation,

the jury was sent home for the night. The following morning, after the jury resumed deliberating, the jury sent another note indicating it was having difficulty once again reaching a verdict. The parties agreed to have the judge return the note with directions that the jury continue to deliberate. A few hours later, the jury reached its verdict of guilty.

¶ 11    In his direct appeal, the defendant alleged prosecutorial misconduct and ineffective assistance of counsel. This court found no reversible error occurred at trial. *People v. Douglas*, No. 1-06-1394 (2008) (unpublished order under Supreme Court Rule 23).

¶ 12    On October 5, 2009, the defendant filed a petition for postconviction relief alleging ineffective assistance of counsel. The defendant alleged counsel committed professional error by not discovering that the defendant had invoked his right to counsel immediately upon his arrest, which would have provided a basis to object to the admission of the defendant's use of an alias at the time of his arrest and his statement that he had never been to the intersection where the murder occurred. His petition also alleged that counsel was ineffective for not calling Erin Wells, who would have contradicted Thomas Brewer's testimony that his fear for his children kept him from talking initially to the police and that Brewer said he "presumed" the defendant had shot the victim because he saw the two together. The defendant submitted affidavits in support of his petition. The defendant's own affidavit stated he was arrested while riding in a taxi, and he invoked his right to counsel immediately upon encountering the police. The affidavit further stated the defendant told his initial counsel that he had requested an attorney upon being arrested. The defendant conceded he never told this to his trial counsel, but explained his trial counsel never asked him about his arrest or his interviews with police investigators.

¶ 13    A friend of the defendant's mother, Gaynette Hoskin, submitted an affidavit stating that she was at the defendant's mother's house on the day the defendant was arrested. When the telephone rang, Ms. Hoskin answered it. Ms. Hoskin stated the caller was a taxi driver, who told her the defendant had been arrested and had told the police he wanted a lawyer. Ms. Hoskin stated that she gave the phone to the defendant's mother, Willia Douglas. Ms. Douglas stated in her affidavit that the taxi driver told her that her son had been arrested and that upon being arrested, the defendant told the police he wanted a lawyer.

¶ 14    Finally, the defendant submitted an affidavit from Erin Wells. In her affidavit, Ms. Wells stated she is the mother of Thomas Brewer's children. She stated she heard Brewer say that he did not see the defendant shoot the victim, but he merely "presumed" the defendant had done it because the defendant was with the victim shortly before the crime. Ms. Wells averred that Brewer told her their children were in no danger from the defendant's family.

¶ 15    The trial court dismissed the postconviction petition as frivolous and patently without merit. The court noted that no affidavit was submitted from the defendant's first attorney, Thomas Organ, to corroborate the defendant's claim that he informed this attorney that he had invoked his right to counsel upon his arrest. The court also ruled the sworn statements from Willia Douglas and Gaynette Hoskin regarding their telephone conversations with the taxi driver constituted inadmissible hearsay. Regarding the defendant's own affidavit, the trial judge concluded it failed to explain why the issues raised in the petition were not raised

on direct appeal. The trial judge ruled the defendant's claims were barred by *res judicata*. Even if not barred, the judge determined the defendant failed to make out a gist of a constitutional claim because his petition lacked factual support and, based on the trial record, trial counsel's representation was competent. The defendant timely appeals from the summary dismissal.

¶ 16                                                ANALYSIS

¶ 17     The defendant alleged that his constitutional rights were violated based on two omissions by his trial counsel, each of which he contends states the gist of a constitutional claim under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)). First, the defendant alleged trial counsel was ineffective for not discovering that he had invoked his right to counsel upon arrest, which would have made his custodial statements subject to suppression. Second, counsel was ineffective for failing to call Erin Wells to impeach Thomas Brewer's testimony.

¶ 18     The Act provides for postconviction relief when a conviction arises from a substantial violation of a constitutional right. 725 ILCS 5/122-1 (West 2008). A postconviction proceeding is a collateral attack on the conviction, not an appeal of the underlying judgment. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002) (citing *People v. Williams*, 186 Ill. 2d 55, 62 (1999)). A defendant bears the burden of demonstrating he qualifies for relief under the Act. 725 ILCS 5/122-1(a)(1) (West 2008).

¶ 19     There are three stages to the postconviction process. 725 ILCS 5/122-2.1 *et seq.* (West 2008). This case concerns only the first stage. Dismissal is proper at the first stage when the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1 (West 2008); *People v. Blair*, 215 Ill. 2d 427, 437 (2006). A petition is frivolous or patently without merit when it has "no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). An example of a frivolous petition or one patently without merit is a petition that is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* Allegations based on established facts should be "liberally construed and taken as true." *People v. Boclair*, 202 Ill. 2d 89, 99 (2002).

¶ 20     A *pro se* petition, while it need not be exhaustive or fully developed, must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2008). To warrant consideration past the first-stage inquiry, a petition "must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *People v. Delton*, 227 Ill. 2d 247, 255 (2008). An appellate court reviews a first-stage summary dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 9. *De novo* review "means we 'are free to substitute our own judgment for that of the circuit court in order to formulate the legally correct answer.' " *People v. Davis*, 403 Ill. App. 3d 461, 464 (2010) (quoting *People v. Newbolds*, 364 Ill. App. 3d 672, 675 (2006)).

¶ 21                           Ineffectiveness Based on Custodial Statements

¶ 22       The defendant contends that trial counsel should have discovered that immediately upon the defendant's arrest, he invoked his right to counsel. Premised on this claim, the defendant asserts the statements elicited by the police that the defendant gave an alias and he denied ever having visited the intersection where the murder occurred were subject to suppression. His first claim of ineffectiveness of counsel is expressly grounded on counsel's failure to object to the admission of these statements.

¶ 23       The State asserts the defendant forfeited this claim because the argument he makes on appeal is not the argument he raised in his *pro se* petition. See *People v. Coleman*, 2011 IL App (1st) 091005, ¶ 27 ("The argument urged before us that '[defendant's] trial attorney *** misinformed [defendant] that, if he were to testify, [defendant's] prior juvenile adjudications would be admissible for impeachment' was not raised in the defendant's postconviction petition and cannot now be urged before us."). If not barred, the State asserts there is no merit to this claim.

¶ 24       In the exercise of our discretion, we elect to address the substance of the defendant's claim rather than determine whether forfeiture applies to the defendant's first claim. See *People v. Harris*, 206 Ill. 2d 1, 15 (2002) ("the doctrines of *res judicata* and waiver are relaxed where the facts relating to the claim do not appear on the face of the original appellate record"). We understand the defendant's real claim to be that his trial counsel rendered ineffective assistance when she failed to file a pretrial motion to suppress the custodial statements based on the defendant's claim that he invoked his right to counsel upon his arrest. Before we address the sufficiency of this claim of ineffectiveness of counsel, we review the purported factual basis underlying this claim.

¶ 25       Essential to the defendant's constitutional claim is his assertion that trial counsel was at fault for not *discovering* that he had invoked his right to counsel soon after he was arrested. That is not an event that lends itself to discovery by trial counsel. See *Delton*, 227 Ill. 2d at 256 ("There is nothing in the transcripts that support [defendant's] claim that he told his attorney prior to trial that he had filed a complaint against the same two [arresting] officers."). Based on our review of the allegations of the defendant's petition, with the trial record clearly in mind, the allegations in the petition and the statements from the defendant, Willia Douglas, and Gaynette Hoskin, in their respective affidavits, amount to no more than *fanciful factual allegations*, which our supreme court has stated subject the postconviction petition to summary dismissal. *Hodges*, 234 Ill. 2d at 16.

¶ 26       Even taking as true the defendant's claim that he told his first attorney that he asked for a lawyer upon his arrest, we find no objective facts that this information rendered trial counsel's representation at trial unreasonable. It fell to the defendant to tell his eventual trial attorney the circumstances of his arrest. *Delton*, 227 Ill. 2d at 256. If anything, accepting as true the defendant's claim that he told his first attorney that he invoked his right to counsel upon his arrest, it follows that nothing prevented the defendant from telling this to his trial attorney as well. See *Delton*, 227 Ill. 2d at 256-57 (excerpts from trial transcript did not support inference that the defendant told his attorney "about the complaining officers' pattern

of harassment against him"). It fell to the defendant to inform his trial attorney of the circumstances of his arrest, which by his own admission he failed to do.

¶ 27       Of course, the record is barren of any factual support for the defendant's claim that he invoked his right to counsel upon his arrest. As the circuit court pointed out, the defendant did not submit an affidavit from attorney Organ to corroborate that he made this claim to his first attorney. Nor does the defendant offer a reason attorney Organ's affidavit could not be obtained given that his representation was never alleged to be substandard. *Cf. People v. Williams*, 47 Ill. 2d 1, 4 (1970) ("the only affidavit that petitioner could possibly have furnished, other than his own sworn statement, would have been that of his attorney[, whom the defendant accused of malpractice]"). As there is nothing in the record to even suggest that the defendant invoked his right to counsel following his arrest and so informed his first attorney but not his trial attorney, we are not engaging in fact finding to suggest that the ineffectiveness of counsel claim seems fanciful at best.

¶ 28       Nor do the affidavits of Willia Douglas and Gaynette Hoskin add a scintilla of factual support to the defendant's claim that he asked for a lawyer upon his arrest. Both Ms. Douglas and Ms. Hoskin averred in their respective affidavits that they spoke to the driver of the taxi in which the defendant was a passenger when he was arrested. The telephone call was received at the defendant's mother's home. According to this telephone call, the taxi driver told each that when the police arrested the defendant, he heard the defendant say he wanted a lawyer. The circuit court was correct, the assertions of Ms. Douglas and Ms. Hoskin amounted to nothing more than unreliable hearsay. We find the supposed telephone call from a taxi driver qualifies as a "fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16.

¶ 29       Had such a telephone call been made and received at the defendant's mother's home, there is no doubt that it would have been the topic of conversation between the defendant's mother and the defendant at some point during his custody. It is reasonable to conclude that this expected conversation between the two would then have found its way to defense counsel. We conclude it is a fanciful factual allegation that at the time the defendant was arrested, he had the presence of mind to give the taxi driver his mother's home number so the driver could call and tell her what he observed and heard the defendant say to the police. Of course, if the taxi driver was involved to the point that he already had the defendant's mother's phone number as the defendant claims, and went to the defendant's mother's house to collect the fare as the defendant explains, then we would expect an affidavit from the taxi driver to support this allegation. There is no such affidavit supporting the defendant's postconviction petition. As we made clear above, no reasonable inference can be drawn from the record that the defendant ever invoked his right to counsel upon his arrest. Nor do the affidavits provide requisite facts, "which can be corroborated," to warrant consideration of the defendant's *pro se* petition past the first stage. *Delton*, 227 Ill. 2d at 255.

¶ 30       Although we have uncovered no case that has held that, as a matter of law, the petition under review asserted nothing more than a "fanciful factual allegation" as described by our supreme court in *Hodges*, we conclude the underlying allegation of a telephone call from an anonymous taxi driver in this case hits that mark. We reject the notion that a challenge to the

effectiveness of trial counsel worthy of our consideration can be grounded on a telephone call that strikes any reasonable person as so far out of the norm that it is fair to characterize the allegations as "fanciful."

¶ 31 The defendant's first claim that he invoked his right to counsel at the time he was arrested inside a taxi has no factual support in the record or the attached affidavits, which renders it patently frivolous. *Id.* The circuit court properly found it subject to summary dismissal. *People v. Collins*, 202 Ill. 2d 59, 67 (2002) (the purpose of requiring affidavits, records, or other evidence to support a postconviction petition is to demonstrate that the "allegations are capable of objective or independent corroboration").

¶ 32 Even if the defendant is entitled to the characterization of the telephone call from the taxi driver relating that the defendant invoked his right to counsel at the time of his arrest as a "well-pled" fact (contrary to our determination), we find no reasonable likelihood of success of a motion to suppress based on the defendant's allegations. Absent such a showing, the defendant is not entitled to proceed beyond the first stage on his petition claiming ineffectiveness of counsel. Defense counsel is under no obligation to pursue a motion that has no chance of success. See *People v. Lundy*, 334 Ill. App. 3d 819, 830 (2002) (no ineffectiveness of counsel when no showing is made that had a motion to suppress been litigated, it had a reasonable probability of success). Nor does the defendant claim a likelihood of success of such a suppression motion in his brief.

¶ 33 We reject the defendant's contention that support can be gleaned from the notes from the jury that it had difficulty reaching a verdict. The notes do not support the defendant's claims that the evidence was close and had the evidence of the defendant's statements been excluded, reasonable doubt might have been present to change the verdict. To the extent the jury had a difficult time in reaching its verdict, the difficulty was owed to defense counsel's effective representation, not counsel's alleged omissions. Ultimately, the nature of the evidence against the defendant, including the testimony of two eyewitnesses, convinced the jury beyond a reasonable doubt of the defendant's guilt. On direct review, the evidence left us with "no concern that the defendant was wrongly convicted." *People v. Douglas*, No. 1-06-1394 (2008) (unpublished order under Supreme Court Rule 23). The evidence was not close. The defendant's contention to the contrary is foreclosed. See *People v. Tripp*, 407 Ill. App. 3d 813, 821 (2011) (in the absence of different facts or a change of the law, the law of the case doctrine bars relitigation of an issue).

¶ 34 While we agree with the defendant that admission of his statements portrayed him as a liar, that is simply a reasonable inference drawn from the testimony at trial. See *People v. Tijerina*, 381 Ill. App. 3d 1024, 1037 (2008) ("A prosecutor may suggest a defendant is a liar if supported by the evidence or a reasonable inference from the evidence."). The defendant's conviction, however, was not based on his being a liar; he was convicted because the jury found the State's case proved his guilt beyond a reasonable doubt when it presented two eyewitnesses that tied the defendant directly with the murder, both of whom knew the defendant for years. It was the incriminating evidence, rather than his lack of truthfulness at the time of his arrest, that sealed the defendant's fate.

¶ 35    It is also true that the statement attributed to the defendant that he denied any familiarity with the crime scene could be seen by the jury as consciousness of his guilt. See *People v. Harris*, 225 Ill. 2d 1, 23 (2007) (generally, both flight and use of an alias may be introduced as consciousness of guilt). The critical issue before us, however, is whether there is an arguable basis for a motion to suppress, with a reasonable probability of success, based on the defendant's 23rd-hour claim that he invoked his right to counsel soon after he was arrested. We find no support for this claim in either the affidavits or the petition. Also, the record contains the defendant's signed *Miranda* waiver form, which stands to his claim that he invoked his right to counsel at the time of his arrest. There is no factual support for the defendant's claim that though he met with his trial counsel only a few times, it fell to counsel to ask the right questions to prompt the defendant to state that he invoked his right to counsel at the time of his arrest. See *Delton*, 227 Ill. 2d at 256-57 (there existed no factual support for the defendant's allegation in the petition that both he and his wife spoke with defense attorney "and told him about the complaining officers' pattern of harassment against him"). The trial judge properly dismissed this claim. It is not arguable that counsel's performance was objectively unreasonable based on a claim that counsel failed to "discover" information that only the defendant could have provided. *Delton*, 227 Ill. 2d at 258; *Hodges*, 234 Ill. 2d at 17.

¶ 36    Nor it is arguable that the defendant suffered prejudice based on his claim that reasonable doubt might have remained had his custodial statements been suppressed. See *People v. Nunez*, 325 Ill. App. 3d 35, 42 (2001) ("a defendant must show that a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed"). Even if the defendant's custodial statements were eliminated from our review, the direct evidence incriminating the defendant does not change. As we stated on direct review, the incriminating evidence left us with "no concern that the defendant was wrongly convicted." *People v. Douglas*, No. 1-06-1394 (2008) (unpublished order under Supreme Court Rule 23). See *People v. Mendoza*, 402 Ill. App. 3d 808, 820 (2010) ("There is little likelihood that the jury verdict would have differed had [expert testimony been admitted] *** to support the defendant's lack of intent claim.").

¶ 37                                   Failure to Call Erin Wells

¶ 38    The defendant next faults trial counsel for not calling Erin Wells as a witness. He claims this omission raises a gist of an ineffective assistance of counsel claim because "Erin Wells *** would have undermined the testimony of the State eyewitness, Thomas Brewer, and corroborated the defense theory that he did not see the shooting." In its written opinion, the circuit court noted that even if it found the defendant's claim to have merit, it was barred from consideration by *res judicata*. The defendant replies that the ineffectiveness claim raised on direct appeal concerned trial counsel's deficient representation "for not maximizing Butler and Brewer's conflicting accounts during closing arguments," which he claims is different from the issue he raises now. Perhaps, but we note that on direct appeal we found trial counsel's performance not to be deficient. *People v. Douglas*, No. 1-06-1394 (2008)

(unpublished order under Supreme Court Rule 23).

¶ 39        Nevertheless, we elect to address the defendant's claim on its merits. See *Harris*, 206 Ill. 2d at 15 ("the doctrines of *res judicata* and waiver are relaxed where the facts relating to the claim do not appear on the face of the original appellate record").

¶ 40        The defendant cites numerous cases to support his claim that Ms. Wells "would have impeached the testimony of Thomas Brewer," and therefore cannot be dismissed as "indisputably meritless." The issue before us is not whether Ms. Wells would have impeached Brewer's testimony; the issue before us is whether the defendant has presented us with a constitutional claim of "arguable merit" that his right to effective assistance of counsel was violated. We find each of the cases cited by the defendant to be inapposite to the controlling issue before us.

¶ 41        In *People v. Williams*, 329 Ill. App. 3d 846, 853-56 (2002), two eyewitnesses gave testimony that conflicted with their earlier statements to police. Defense counsel cross-examined the witnesses, but they did not admit that their statements to the police were inconsistent with their trial testimony. *Id.* at 854-55. Rather than calling the officers at trial to prove up the impeachment, defense counsel agreed to a stipulation that the witnesses spoke to police, but the stipulation mentioned nothing about the inconsistencies. *Id.* at 856. The reviewing court found the cross-examination and the stipulation were inadequate substitutes for the live testimony of the police officers. *Id.* at 856-57. *Williams* differs from the facts before us. In *Williams*, the witnesses refused to admit they made inconsistent statements and counsel failed to prove that they did through the testimony of officers. In this case, Brewer admitted he initially said he did not see the defendant shoot the victim. The officer called in the defendant's case-in-chief testified that Brewer gave conflicting statements. In *Williams*, the officers would have provided information not otherwise before the jury, while Erin Wells would have reiterated some of what Brewer admitted on cross-examination, which the testimony of the sole defense witness repeated, rendering Wells' impeachment testimony cumulative at best. Further, the impeachment evidence in *Williams* challenged the credibility of both eyewitnesses. In this case, the testimony of one eyewitness, Butler, remained unchallenged, and his credible account of the shooting alone was sufficient to support the jury's verdict. See *People v. Robertson*, 198 Ill. App. 3d 98, 106-07 (1990) (testimony of one credible eyewitness sufficient to support a conviction).

¶ 42        Nor does the quote from *People v. Salgado*, 263 Ill. App. 3d 238, 246-47 (1994), provide any support: " '[T]he *complete* failure to impeach the *sole* eyewitness when significant impeachment is available is not trial strategy and, thus, may support an ineffective assistance claim.' " (Emphasis added.) Brewer was not the sole eyewitness and defense counsel did not *completely* fail to impeach him.

¶ 43        Finally, the defendant cites three cases for the proposition that "[r]eviewing courts find ineffective assistance of counsel where trial counsel fails to impeach a witness based on their [*sic*] prior inconsistent statements." However, in all three cases, counsel made several errors only one of which was failing to impeach a witness. It was the cumulative effect of the errors that led the reviewing court to find counsel ineffective in each case. See *People v. Vera*, 277

Ill. App. 3d 130, 139-41 (1995); *People v. Skinner*, 220 Ill. App. 3d 479, 486-87 (1991); *People v. Garza*, 180 Ill. App. 3d 263, 267-70 (1989).

¶ 44 The defendant fails to provide us with a single case analogous to the instant case. Here we have two eyewitnesses presented by the State. Each of the eyewitnesses was well acquainted with the defendant so identification was not at issue. Each of the witnesses directly implicated the defendant as the shooter. We understand the defendant to claim that because the testimony of one of the eyewitnesses would have been challenged by the testimony of Ms. Wells had she been called, it means he has presented a claim of arguable merit of ineffective assistance of counsel. We do not agree. Nor did the defendant cite a single case in which failure to impeach one eyewitness with prior inconsistent statements supports an arguable claim of ineffective assistance of counsel when another eyewitness's testimony directly points to the defendant's guilt.

¶ 45 Under *Hodges*, when a postconviction defendant asserts a claim of ineffective assistance of counsel, a court of review asks whether "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. While it is likely neither prong can be met here, that the defendant cannot prove prejudice is sufficient to reject his claim of ineffective assistance of counsel. *Id.*

¶ 46 Thomas Brewer testified that he saw the defendant shoot the victim, and he did not come forward at first because his children lived with the defendant's mother and he feared for their safety. Defense counsel cross-examined Thomas Brewer. She confronted him with the fact that he told the defendant's mother he did not see the defendant kill the victim. She also pointed out that he allowed his children to stay with the defendant's mother even after Brewer gave his statement to the police incriminating the defendant. Thomas Brewer was clearly impeached. We are presented with no case law authority that dictates *full and complete impeachment* to vindicate the defendant's right to effective assistance of counsel. See *People v. Chears*, 389 Ill. App. 3d 1016, 1030 (2009) (postconviction claim of ineffective assistance of counsel "that further impeachment of [the State's key witness] based on his additional criminal history would have affected [the] sentencing determination" rejected). The defendant "is entitled to a fair trial, not a perfect one." *People v. Griffin*, 178 Ill. 2d 65, 90-91 (1997). The defendant fails to explain how he was prejudiced by counsel's failure to do more to impeach Brewer, an argument not too different from the one we rejected on direct appeal. *People v. Douglas*, 1-06-1394 (2008) (unpublished order under Supreme Court Rule 23).

¶ 47 Nor are we persuaded that additional impeachment would have "corroborated the defense theory," as the defendant claims in his main brief. If, as the defendant asserts in his brief, his "defense theory [was that Brewer] did not see the shooting," we conclude that additional impeachment would not have "corroborated" this theory at all. Additional impeachment would not have provided any evidence of this theory. Impeachment is not evidence. *People v. Smith*, 177 Ill. 2d 53, 83 (1997) (prior inconsistent statements are not substantive evidence). It simply challenges the credibility of the witness. Ultimately, it falls to the trier

of fact to determine whether that challenge was successful, something we cannot determine on review. And, a court of review will not upset a verdict by a jury on the possibility, not probability, that with a little bit more impeachment, the witness would have been found totally incredible. In any event, the jury may well have given little weight to Thomas Brewer's testimony in favor of relying on the testimony of David Butler, whose testimony the defendant completely ignores in his brief.

¶ 48 This is an appeal from the summary dismissal of the defendant's postconviction petition. It is not a second direct appeal. This *inadequate impeachment* claim does not rise to the level of a constitutional violation of the defendant's right to effective assistance of counsel. We decline to analyze this claim as if it were a direct appeal, considering the circumstances of this case of another eyewitness testifying to the deliberate murder by the defendant. See *People v. Coleman*, 206 Ill. 2d 261, 277 (2002) (a postconviction proceeding is a collateral attack on the conviction, not an appeal of the underlying judgment).

¶ 49 The defendant has failed to demonstrate that he was arguably prejudiced by counsel's failure to call an additional witness that would have provided further impeachment of one of two eyewitnesses presented by the State. See *Hodges*, 234 Ill. 2d at 17; *Chears*, 389 Ill. App. 3d at 1030.

¶ 50                                                    CONCLUSION

¶ 51 The defendant's postconviction petition alleging ineffective assistance of counsel was properly dismissed at the first stage because the petition failed to assert a factual basis for the defendant's claim that his trial counsel should have *discovered* that the defendant invoked his right to counsel at the time of his arrest when the defendant failed to so inform his trial attorney. The affidavits of third persons fail to provide any factual support for this claim when their averments relied on a telephone call from an anonymous taxi driver. Nor was trial counsel arguably ineffective for failing to call a witness that could have provided *additional* impeachment of one of two eyewitnesses on matters that, even if believed, would not have undermined the State's substantial evidence against the defendant. We affirm the judgment of the circuit court of Cook County.

¶ 52 Affirmed.