**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190539-U

Order filed December 2, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0539 Circuit No. 11-CF-733 |
| | ) | |
| SAMUEL L. CARPENTER, JR., | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justice Schmidt concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1      *Held*:  (1) Trial court did not err in dismissing defendant's postconviction petition at the second stage where defendant failed to make a substantial showing of ineffective assistance of trial and direct appeal counsel; and (2) postconviction counsel provided reasonable assistance under Illinois Supreme Court Rule 651(c).

¶ 2      Defendant, Samuel L. Carpenter, Jr., sought postconviction relief following his conviction

for aggravated battery with a firearm and aggravated unlawful use of a weapon. The Peoria County

circuit court dismissed his petition at the second stage. Defendant appeals, claiming he made a substantial showing that (1) trial and direct appeal counsel were ineffective for failing to assert that defendant suffered a speedy trial violation, and (2) trial and appellate counsel were ineffective for failing to challenge the victim's photo lineup identification. He also argues that postconviction counsel provided unreasonable assistance by failing to raise an actual innocence claim. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On August 23, 2011, defendant was charged by indictment with aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)) and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2010)).

¶ 5        On November 15, 2011, the day of trial, defendant disclosed a potential witness, Willie Cockroft. The State requested a continuance to interview the witness. In discussing the continuance, the State noted that defendant had been in custody for 109 days. Defendant then argued that any delay should be attributed to the State because the witness's street name appeared in police reports that had been accessible to both parties. The court found that a street name was not sufficient notice of a witness's identity and continued the trial to Monday, November 28, attributing the delay to defendant.

¶ 6        A jury trial was held on November 28, 2011. At trial, Officer James Hartman testified that, on June 7, 2011, he responded to a call of shots fired in the area of Richmond Avenue and Linn Street in Peoria. Hartman arrived at the scene around 4 a.m. He saw an unoccupied green van with blood spattered across the interior. Outside the passenger side of the van, he discovered a small handgun.

¶ 7        Officer John Briggs testified that on the morning of the incident, he was dispatched to the location of a gunshot victim. At 1810 North Street, Briggs saw the victim, Martin Cooper, lying

face down on the front porch. His head and torso were lying on the porch and his legs were positioned in the doorway, partially inside the residence. Cooper had suffered a gunshot wound to the head and was lying in a large pool of blood. Briggs testified that Cooper was conscious, alert, and breathing. Officer Briggs asked Cooper who shot him, and Cooper responded "Little Sammie." Cooper was transferred from the scene to Saint Francis Medical Center.

¶ 8        Officer Bradley Scott testified that he also responded to the home where Cooper was found. At the scene, he noticed that Cooper was bleeding from the left side of his head and that a large amount of blood had pooled on the porch floor. Scott heard Cooper say that he had been shot by "Little Sammie."

¶ 9        Dr. Babas Rammos, Cooper's treating physician, testified that Cooper arrived at the hospital with a gunshot wound to the left side of his head. A computerized tomography scan revealed ballistic fragments lodged in Cooper's head. He was released from the hospital the day after he was admitted.

¶ 10        Crime scene technician Paul Tuttle testified that he responded to 1810 North Street on June 7, 2011, and photographed a green van that appeared to have hit a black Nissan truck. A nine-millimeter semiautomatic handgun was lying in the grass near the vehicle. The magazine of the handgun was loaded with seven nine-millimeter bullets. Inside the van, Tuttle saw blood on the front windshield and discovered a shell casing in the driver's door pocket. The weapon and shell casing were processed for fingerprints, but none were found.

¶ 11        Cooper testified that he did not recall being in the area of Richmond and Linn when the shooting occurred, and he did not remember being shot. He only remembered being discharged from the hospital on June 8, 2011. He testified that his memory had been poor since he had been shot. He did not recall speaking with Detective Timothy Moore while he was in the hospital or

3

identifying the shooter from a photographic lineup. Cooper did not remember telling Moore that the defendant entered the front passenger door of the van and pulled out a semi-automatic handgun, which Cooper tried to wrestle away from defendant. He also did not remember telling Moore that "Little Sammie" shot him as he pushed on the accelerator and drove off.

¶ 12    Kameron Reddick agreed to testify only after he was granted use immunity. Reddick testified that he did not know defendant, and he was at home on the day of the shooting. Reddick agreed that he spoke with Moore about the June 7, 2011, incident at the police station. Reddick admitted that he gave a recorded statement to Moore but claimed that prior to making the statement he memorized the events from a statement that Moore had read.

¶ 13    Reddick admitted that during his interview he identified the defendant from a photograph as "Little Sammie, Sam Carpenter, Junior." Reddick also told Moore that Cooper was sitting in a parked green van and spoke to a woman. After the woman walked away, defendant jumped in the van and put a gun to Cooper's head. Reddick agreed that he had told Moore that eventually Cooper sped off with the defendant in the van. Reddick heard a gunshot, and the van ran into a truck. Reddick also testified that he was "highly intoxicated" at the time of the interview, and he did not understand the questions that Moore was asking.

¶ 14    Later, the defense recalled Reddick. Defense counsel read Reddick a letter that he sent to the court. In the letter, Reddick said that the statement he gave to Moore was false and that he was "very intoxicated" during the interview. Reddick stated that he had been told that his cooperation would help with his pending case, but he had initially refused to testify because his statements to the police were false.

¶ 15    On cross-examination, Reddick testified that he cooperated with the police by repeating the story Moore instructed him to report before the interview began. Reddick testified that, despite

4

being "highly intoxicated" on Ecstasy and cocaine, he was able to remember all the information Moore provided before the recorded interview. He testified later, however, that he could not understand Moore's questions during the recorded interview and that he had no idea what he was answering.

¶ 16 Detective Moore testified that he interviewed Cooper in the hospital the day after the shooting. Cooper told him that on the date of the incident, he was socializing on Richmond Avenue with a group of people that included defendant. After approximately 15 minutes, defendant jumped in the front passenger seat of the van Cooper was sitting in and pulled out a handgun. Cooper tried to push the gun away. Eventually, Cooper shifted the van into drive and pressed the accelerator while he continued to struggle with defendant. Defendant fired a shot as the van sped off.

¶ 17 After discussing the events, Moore asked Cooper to identify defendant from a six-person photographic lineup. Moore testified that Cooper circled defendant's photograph "with difficulty." Moore explained that Cooper had difficulty drawing a circle around defendant's picture because his left eye was swollen shut and the sun was shining brightly into the hospital room. Since Cooper had a hard time holding the pen, Moore wrote Cooper's initials and the date underneath the circle Cooper drew around defendant's photo.

¶ 18 On October 8, 2011, Moore interviewed Reddick, who was in custody on an unrelated matter. Moore notified Reddick that he was a possible witness to a shooting. Moore testified that, at the time of the interview, Reddick did not appear intoxicated. He denied providing Reddick with any information regarding the shooting prior to videorecording the interview. During the interview, Reddick provided an account of the events of June 7, 2011. On recall, Moore denied telling Reddick that his cooperation would lead to assistance with his pending case.

5

¶ 19 The jury found defendant guilty of both charges, and the trial court sentenced him to consecutive terms of 21 years' imprisonment for aggravated battery with a firearm and 6 years' imprisonment for aggravated unlawful use of a weapon.

¶ 20 On direct appeal, defendant argued that the State failed to prove beyond a reasonable doubt that he committed aggravated battery with a firearm and challenged his sentence as excessive. This court affirmed, concluding that the evidence adduced at trial allowed the jury to infer that defendant knowingly discharged a firearm that caused Cooper's injuries and that his sentence was appropriate. See *People v. Carpenter*, 2014 IL App (3d) 120549-U, ¶ 24.

¶ 21 On April 9, 2015, defendant filed a *pro se* postconviction petition, claiming that: (1) his statutory right to a speedy trial was violated; (2) both trial and appellate counsel were ineffective in failing to move for a speedy trial discharge; (3) his due process rights were violated because the prosecutor failed to disclose Reddick's plea agreement; (4) his sentence for unlawful use of a weapon was unconstitutional as applied to him; (5) the trial court violated his right to a fair trial by refusing to tender a proposed jury instruction pertaining to witness immunity; (6) trial counsel was ineffective for failing to call the woman Reddick identified as a witness at trial; and (7) trial and appellate counsel were ineffective for failing to challenge the admission of the photo lineup shown to Cooper.

¶ 22 The petition proceeded to the second stage with appointed counsel. Counsel filed an amended petition, attached a Rule 651(c) certificate, and subsequently resigned. The trial court then appointed new counsel, who also filed a Rule 651(c) certificate.

¶ 23 The State filed a motion to dismiss. The State asserted, among other things, that no speedy trial violation occurred and that there was no evidence to suggest that the photo lineup was

6

unreliable or that Cooper's identification of defendant was improper. Following a second-stage hearing, the trial court granted the State's motion and dismissed defendant's petition.

¶ 24                                    II. ANALYSIS

¶ 25        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides for a three-stage proceeding. At the first stage, the trial court may summarily dismiss the petition if it finds that it is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the trial court does not dismiss the petition, it advances to the second stage. At the second stage, counsel may be appointed and the State may file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 122-5 (West 2018). At this stage, the trial court must determine whether the petition and any accompanying documentation make a "substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The "substantial showing" that must be made at the second stage is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at the third stage would entitle petitioner to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. We review the trial court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 26                            A. Speedy Trial Violation

¶ 27        Defendant first claims that the trial court erred in dismissing his petition at the second stage where he presented a substantial showing of ineffective assistance of trial and direct appeal counsel for failing to assert a speedy trial violation.

¶ 28        A claim of ineffective assistance of counsel is governed by the two-pronged Strickland test. *People v. Ward*, 187 Ill. 2d 249, 261 (1999). To prevail on such a claim, a defendant must show that counsel's performance was deficient and that he or she was prejudiced by the deficient

7

performance. *Domagala*, 2013 IL 113688, ¶ 36. The deficient-performance prong requires a defendant to show that counsel's performance was objectively unreasonable. *People v. Veach*, 2017 IL 120649, ¶ 30. The prejudice prong requires a showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. A defendant must satisfy both prongs to prove a claim of ineffective assistance of counsel. *Id*. On review, we defer to the trier of fact unless the findings are against the manifest weight of the evidence, but we review the ultimate legal conclusion of whether counsel's actions support a claim of ineffective assistance *de novo*. *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008).

¶ 29 Claims of ineffective assistance of appellate counsel are reviewed using the same standard as those involving ineffective assistance of trial counsel. *People v. Childress*, 191 Ill. 2d 168, 175 (2000). Counsel on appeal renders ineffective assistance by failing to raise an issue on direct appeal if that failure was objectively unreasonable and the decision prejudiced the defendant. *People v. Easley*, 192 Ill. 2d 307, 328-29 (2000). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Id*. at 329. In other words, unless the underlying issue is meritorious, a defendant suffers no prejudice from counsel's failure to raise it on appeal.

¶ 30 Essential to a postconviction claim of ineffective assistance of direct appeal counsel is proof of an error of constitutional dimension during trial, which counsel on direct appeal failed to raise. *People v. Douglas*, 2011 IL App (1st) 093188, ¶ 48. Ultimately, the "substantial showing" of a constitutional claim of ineffective assistance of appellate counsel turns on whether petitioner's underlying ineffective assistance of trial counsel claim would have been successful if raised on direct appeal. See *People v. Dixon*, 2019 IL App (1st) 160443, ¶ 46 ("where a defendant raises

8

ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel, the ultimate question as to prejudice asks whether the claim of *trial* counsel's ineffectiveness has merit" (emphasis in original))

¶ 31     In his postconviction petition, defendant alleges that his statutory speedy trial rights were violated when the trial court improperly attributed the delay caused by the late disclosure of witness Cockroft to him and continued his trial to November 28, 2011.

¶ 32     In Illinois, a criminal defendant has a constitutional and a statutory right to a speedy trial. *People v. Staten*, 159 Ill. 2d 419, 426 (1994). Section 103-5(a) of the speedy-trial statute provides an automatic 120–day speedy-trial right for a defendant who remains in custody awaiting trial. 725 ILCS 5/103-5(a) (West 2018); *People v. Wooddell*, 219 Ill. 2d 166, 174 (2006). Proof of a statutory speedy trial violation requires only that the defendant has not been tried within the period set by statute and that the defendant has not caused or contributed to the delay. *People v. Patterson*, 392 Ill. App. 3d 461, 465 (2009).

¶ 33     For purposes of calculating speedy trial days, the first day is excluded and the last day is included pursuant to section 1.11 of the Statute on Statutes. See generally *People v. Ladd*, 185 Ill. 2d 602, 607-608 (1999). Specifically, section 1.11 of the Statute on Statutes provides:

> "The time within which any act provided by law is to be done shall be computed
> by excluding the first day and including the last, unless the last day is Saturday or
> Sunday or is a holiday ***, and then it shall also be excluded." 5 ILCS 70/1.11
> (West 2010).

¶ 34     Here, calculating the time pursuant to the Statute on Statutes, defendant's trial occurred within the 120-day period. As of November 15, 2011, defendant had been in custody for 109 days. Counting consecutive days thereafter, the 120-day mark fell on Saturday, November 26, 2011, and

9

defendant's trial began on the following Monday, November 28, 2011. Thus, defendant was not denied his statutory right to a speedy trial and his claims of ineffective assistance of trial and appellate counsel are without merit.

¶ 35                                    B. Photo Lineup Identification

¶ 36        Next, defendant claims that Detective Moore's failure to follow the statutory requirements for photo identification and have Cooper sign the required waiver form invalidated Cooper's identification. He claims trial counsel was ineffective for failing to file a motion to suppress Cooper's identification on that basis and that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness on appeal.

¶ 37        Matters of trial strategy, such as whether to file a motion to suppress, are generally immune from claims of ineffective assistance of counsel. *People v. Nunez*, 325 Ill. App. 3d 35, 42 (2001). Counsel's failure to file a motion to suppress does not establish incompetent representation when that motion would be futile. *People v. Pacheco*, 281 Ill. App 3d 179, 183 (1996). A defendant must show that a reasonable probability exists that both the motion to suppress would have been granted and that the outcome of the trial would have been different if the evidence had been suppressed. *People v. Lundy*, 334 Ill. App. 3d 819, 830 (2002). Appellate counsel may refrain from raising meritless issues unless counsel's appraisal of the merits is patently wrong. *People v. Barnard*, 104 Ill. 2d 218, 230 (1984).

¶ 38        Ordinarily, a ruling on a motion to suppress an identification involves a two-part inquiry: (1) defendant has the burden of showing that the identification was so unnecessarily suggestive and conducive to misidentification that he was denied due process of law; and (2) if defendant meets that standard, the burden shifts to the State to make a clear and convincing showing that the

10

identification was a product of the witness's independent recollection. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 95.

¶ 39     Section 5/107A-5 of the Code of Criminal Procedure, the statute governing photo array and lineup procedures that was in effect at the time of defendant's trial, provided the following:

"a) All lineups shall be photographed or otherwise recorded. These photographs shall be disclosed to the accused and his or her defense counsel during discovery proceedings as provided in Illinois Supreme Court Rules. All photographs of suspects shown to an eyewitness during the photo spread shall be disclosed to the accused and his or her defense counsel during discovery proceedings as provided in Illinois Supreme Court Rules.

(b) Each eyewitness who views a lineup or photo spread shall sign a form containing the following information:

(1) The suspect might not be in the lineup or photo spread and the eyewitness is not obligated to make an identification.

(2) The eyewitness should not assume that the person administering the lineup or photo spread knows which person is the suspect in the case.

(c) Suspects in a lineup or photo spread should not appear to be substantially different from "fillers" or "distracters" in the lineup or photo spread, based on the eyewitness' previous description of the perpetrator, or based on other factors that would draw attention to the suspect." 725 ILCS 5/107A-5 (West 2010).

¶ 40     Effective January 1, 2015, the legislature replaced section 107A-5 with section 107A-2, a statute which imposes requirements for lineup and photo identifications. See Public Act 98-1014,

§ 15 (eff. Jan 1, 2015). Subsection (j)(1) of the new statute identifies the consequences of noncompliance and provides as follows:

> "Failure to comply with any of the requirements of this Section shall be a factor to
> be considered by the court in adjudicating a motion to suppress an eyewitness
> identification or any other motion to bar an eyewitness identification." 725 ILCS
> 5/107A-2(j)(1) (West 2016).

A violation of the procedural dictates of the lineup statute does not necessarily influence the reliability of a witness's identification. See *People v Roberts*, 2020 IL App (2d) 172262, ¶ 32; *In re N.A.*, 2018 IL App (1st) 181332, ¶ 35.

¶ 41 Here, defendant does not suggest that the photo array was unnecessarily suggestive. Instead, he argues that suppression is warranted due to law enforcement's failure to comply with the statute's recording procedures. However, such a remedy is not required by the language of the statute as codified in section 107A-5 or revised in section 107A-2. Moreover, a review of the photo lineup does not indicate that the collection of photographs was suggestive or conducive to misidentification. Thus, defendant has failed to establish that a motion to suppress would have been granted if trial counsel had filed such a motion.

¶ 42 Even assuming that a motion to suppress would have been successful, it would not have altered the outcome of defendant's trial. As emphasized on direct appeal, the evidence of defendant's guilt was not limited to Cooper's photo lineup identification of defendant while he was hospitalized. Cooper also identified defendant as the shooter while he was lying on the porch. Evidence at trial included Moore's testimony that Cooper identified defendant as the shooter at the scene and that Cooper described the events leading up to the shooting at the hospital the next day. Physical evidence gathered by the crime scene technician corroborated Cooper's statements, as

well as Reddick's identification in his pretrial statement to Detective Moore. Given this evidence, we conclude that even if counsel had successfully moved to suppress Cooper's photo identification, the outcome of the trial would not have differed. Thus, appellate counsel was not ineffective for failing to raise this ineffective assistance of trial counsel claim.

¶ 43        We do not condone Moore's failure to follow the statutory requirements in this case. Nevertheless, we must reject defendant's ineffective assistance claims; defendant failed to establish that he was prejudiced by trial counsel's representation. See *Roberts*, 2020 IL App (2d) 172262, ¶ 35 (noting that the lineup identification statute is designed to protect the rights of criminal defendants as well as preserve the integrity of police investigations and that the failure to abide by the statute may compel a different result in another case).

¶ 44                                    C. Actual Innocence

¶ 45        Last, defendant claims that postconviction counsel was ineffective for failing to raise a claim of actual innocence in his postconviction proceedings.

¶ 46        The right to counsel in postconviction proceedings is a statutory right, as provided in the Post-Conviction Act, not a constitutional one. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Thus, a postconviction petitioner is entitled to only a "reasonable" level of assistance, which is less than that the federal or state constitution provides. *Pendleton*, 223 Ill. 2d at 472. Illinois Supreme Court Rule 651(c) requires postconviction counsel to file a certificate stating that counsel has (1) consulted with the defendant to ascertain his or her contentions of deprivation of constitutional rights, (2) examined the record of the trial proceedings, and (3) amended the *pro se* petition, if necessary, to ensure an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption

13

that post-conviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 47 As the Rule provides, postconviction counsel is required to examine the record and make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Interpreting that language, our supreme court has emphasized that postconviction counsel is only required to investigate and properly present those claims raised by the defendant in his or her *pro se* petition. *Pendleton*, 223 Ill. 2d at 475-76; see also *People v. Davis*, 156 Ill. 2d 149, 163-64 (1993) (postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation and formulation of potential claims"). "While postconviction counsel *may* conduct a broader examination of the record [citation], and may raise additional issues if he or she so chooses, there is no obligation to do so." (Emphasis in original.) *Pendleton*, 233 Ill. 2d at 476.

¶ 48 On appeal, defendant contends that postconviction counsel was ineffective for failing to raise a claim of actual innocence by gathering statements from the residents of 1810 North Street and emergency medical technicians who treated Cooper at the scene. However, defendant did not raise a claim of actual innocence in his *pro se* petition, nor did he provide affidavits from witnesses at the scene that would potentially change the outcome on retrial. See *People v Robinson*, 2020 IL 123849, ¶ 47 (actual innocence claim requires newly discovered evidence of such conclusive character that it would probably change the result on retrial). Contrary to defendant's assertion, postconviction counsel was not obligated to investigate and explore potential claims of innocence that defendant did not make in his *pro se* petition.

¶ 49     Under these circumstances, postconviction counsel was not required to amend defendant's petition to assert a claim of actual innocence and defendant was not denied reasonable assistance by her failure to do so.

¶ 50                                    III. CONCLUSION

¶ 51     The judgment of the circuit court of Peoria County is affirmed.

¶ 52     Affirmed.

¶ 53     PRESIDING JUSTICE McDADE dissenting:

¶ 54     I agree with the majority's reasoning and result with respect to defendant's claims relating to speedy trial and actual innocence. However, I would find that defendant has made a substantial showing that trial counsel provided ineffective assistance in failing to move to suppress Cooper's identification. Therefore, I respectfully dissent.

¶ 55     In this case, Moore committed multiple violations of the statute prescribing the procedures to be employed in lineup identifications. That statute required that "[a]ll lineups shall be photographed or otherwise recorded." 725 ILCS 5/107A-5(a) (West 2010). It also required that the witness "shall sign a form" acknowledging that the suspect may not be in the lineup and that the witness should not assume the administrator of the lineup knows which person is the suspect. *Id*. § 107A-5(b). Moore unquestionably did not comply with either of these requirements. No recording of the lineup was made, and Moore expressly stated he did not provide Cooper with any sort of form. Nor did Cooper authenticate his claimed identification of Carpenter in any way. Indeed, Moore admitted that he fabricated Cooper's initials and the date on the photo array, while maintaining that Cooper made the identification.

¶ 56     After noting that violations of the lineup statute do not necessarily impact the reliability of the underlying identification, the majority summarily concludes that "a review of the photo lineup

15

does not indicate that the collection of photographs was suggestive or conducive to misidentification." *Supra* ¶ 41. The majority's attempt to imply the reliability of the lineup process in this case based *only* on the collection of photographs shown to Cooper highlights the impact that Moore's failures to comply with the statute had on the process.

¶ 57 The best way to determine whether Cooper's identification was the result of a reliable process would be to view a recording of the entire lineup administration. See 725 ILCS 5/107A-2(e)(1)(A) (West 2016) ("[A]n audio and video recording of the lineup will be made for the purpose of accurately documenting all statements made by the eyewitness."). That review is made impossible by Moore's failure to comply with the statute. Likewise, Moore apparently failed to inform Cooper of a number of guiding principles in making his identification, namely: (1) the suspect might not be in the lineup; (2) Cooper was not obligated to make an identification; and (3) Cooper should not assume that Moore knew which person in the lineup was the suspect. See 725 ILCS 5/107A-5 (West 2010). These principles serve to ensure that the eyewitness makes a reliable identification. Thus, while this court may review the actual photographs shown to Cooper, we are unable to determine if the lineup was presented in a coercive or suggestive way, and unable to determine whether Cooper even understood the rules of the lineup.

¶ 58 The plain intent underlying the lineup statute is to ensure the reliability of out-of-court identifications. Where Moore thoroughly and repeatedly failed to comply with the mandates of that statute, neither this court nor the trial court can determine with any reasonable level of certainty that Cooper's identification was, in fact, reliable. Accordingly, a motion to suppress that identification, had it been filed by counsel, would have been meritorious. *People v. Henderson*, 2013 IL 114040, ¶ 15

16

¶ 59 The majority further concludes that "[e]ven assuming that a motion to suppress would have been successful, it would not have altered the outcome of defendant's trial." *Supra* ¶ 42. I disagree.

¶ 60 The evidence at defendant's trial was not especially compelling. *Carpenter*, 2014 IL App (3d) 120549-U, ¶¶ 39-44 (McDade, J., specially concurring). The State's case was built primarily on the recanted statement of Reddick, presented at trial through the hearsay testimony of Moore. Cooper's identification of defendant played a significant role in corroborating that statement. Moreover, the majority points out that Cooper, in addition to making an identification, also described the events leading up to the shooting. Of course, Cooper testified that he had no recollection of that, and his statements at the hospital came in, once again, only through the hearsay testimony of Moore. Further, that statement is not directly probative of defendant's guilt if Cooper's alleged identification of defendant as the shooter is suppressed. Finally, while Briggs and Scott testified that Cooper identified "Little Sammie" as the shooter, that oral identification— made only moments after Cooper was shot in the head—is inherently less compelling than the visual identification Moore claims Cooper made in the relative calm of the hospital the next day.

¶ 61 In short, Cooper's identification of defendant was an important component in a weak body of evidence presented by the State. See *id*. A reasonable probability exists that if that identification was suppressed, the result at defendant's trial would have been different. *Henderson*, 2013 IL 114040, ¶ 15.

¶ 62 Accordingly, defendant has made a substantial showing that trial counsel was ineffective for failing to move to suppress Cooper's identification, and that appellate counsel, in turn, was ineffective for failing to raise that issue. Because that conclusion is warranted by facts apparent on the face of the record, no further factfinding by the trial court is required. I would therefore grant

postconviction relief outright and remand the matter for a new trial. See *People v. Jimerson*, 166

Ill. 2d 211, 231 (1995).